UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT E. SMITH,                               Case No. 17-11848

           Plaintiff,                  Thomas L. Ludington
v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 16, 17)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On June 10, 2017, Robert E. Smith filed the instant suit.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Thomas L.

Ludington referred this matter to the undersigned for the purpose of reviewing the

Commissioner's unfavorable decision denying plaintiff's claim for supplemental

security income benefits.  (Dkt. 4).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 16, 17).

B.      Administrative Proceedings

Plaintiff filed an application for supplemental security income on August 4, 2014, alleging disability beginning on January 1, 2014.  (Tr. 21).[1]  The claims were initially disapproved by the Commissioner on December 8, 2014.  (*Id.*).  Plaintiff requested a hearing and on February 19, 2016, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Carol Guyton, who considered the case *de novo*.  (Tr. 21-32).  In a decision dated March 2, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 32).  Plaintiff requested a review of this decision.  (Tr. 15-6).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 10, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born February 8, 1962, was 52 years old on the alleged disability onset date.  (Tr. 30).  Plaintiff resides alone and has an eleventh grade education. He has past relevant work as a maintenance cleaner monitor, metal grinder, and metal bundler.  (Tr. 30).  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since August 5, 2014, the application date.  (Tr. 23).  At step two, the ALJ found that plaintiff's major depressive disorder with psychosis, anxiety disorder, and lumbar spine disorder were "severe" within the meaning of the second sequential step. (Tr. 23).  However, at step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 24).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant is limited to simple, routine tasks involving no more than simple, short instructions; simple work related decisions; and few workplace changes.  The work must not require production-pace work or reading as part of the job.  The claimant can have no contact with the public and only occasional contact with coworkers.

(Tr. 26).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 30).  At step five, the ALJ denied plaintiff benefits because she found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 31).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred in finding that plaintiff does not meet Listing 12.05(C), as effective on the date of the ALJ decision.  (Dkt. 16, at p. 9). In order to meet Listing 12.05, plaintiff must have an intellectual disability with deficits in adaptive functioning initially manifested during the developmental period, i.e. where the evidence demonstrates or supports onset of the impairment before age 22.  Further, the required level of severity for intellectual disability is met when the requirements of A, B, C, or D are satisfied.  Paragraph C provides, "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (*Id.*).

Citing the American Association of Intellectual and Developmental Disabilities, plaintiff contends that his 2015 intellectual disability diagnosis itself indicates manifestation before age 18.  (*Id.* at p. 11, n. 4).  Further, plaintiff contends that the academic difficulties he suffered throughout his developmental years demonstrate sub-average general intellectual function before age 22.

4

Plaintiff provided his school transcript which shows consistent difficulty with language arts, math, and work habits from primary school forward.  (*Id.*) (citing Tr. 213).  Plaintiff also testified that he was removed from the regular classroom because he had fallen too far behind and put into a separate class.  He was referred to "job upgrading" in 1978, and left school at age 16 and went to prison for killing a boy who stole his brother's coat.  (*Id.* at p. 5, 11).  He learned to read in prison at age 19 or 20, but failed to pass the GED three times while in prison.  (*Id.* at p. 11).  Plaintiff's work history consists of short-term jobs he often could not complete satisfactorily.  (*Id.* at p. 12).

Plaintiff states that he satisfies the testing requirements of 12.05C.  His full-scale IQ is 63, verbal comprehension is 66, and processing speed is 65.  (*Id.* at 13) (citing Tr. 292).  Further intellectual testing demonstrates difficulty in intellectual functioning.  In addition, plaintiff states that he was diagnosed with major depressive disorder, recurrent, and bipolar disorder.  (*Id.* at p. 13) (citing Tr. 244-27, 254, 259).

C.    Commissioner's Motion for Summary Judgment

The Commissioner concedes that, during the alleged disability period, plaintiff had a verbal, performance, and full scale IQ falling between 60 and 70, and a physical or other mental impairment imposing an additional and significant work-related limitations of function.  (Dkt. 17, at p. 6).  However, the

Commissioner contends that the ALJ's decision that the record evidence failed to demonstrate that plaintiff had "'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period' as required under section 12.05" is supported by substantial evidence.  Plaintiff provides his childhood academic record, which the ALJ noted to be "poor," but this is not enough to satisfy the Listing.  According to the Commissioner, the Sixth Circuit has held that "neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two."  (*Id.* at p. 6-7) (*Peterson v. Comm'r of Social Security*, 552 F. App'x 533, 540 (6th Cir. 2014); *Foster v. Halter*, 279 F.3d 348, 352- 55 (6th Cir. 2001)).  In *Foster*, "a ninth-grade education completed through special education classes, followed by numerous unsuccessful attempts at a GED, coupled with an adult full scale IQ of 69 did not establish adaptive functioning deficits prior to age twenty-two."  (*Id.* at p. 7) (*Foster*, 279 F.3d at 352-55)).

The Commissioner further contends that plaintiff's history of some semiskilled work further supports the ALJ's decision.  (*Id.* at p. 9)  In support, the Commissioner cites to cases which indicate that a history of semiskilled work undermines the argument that a claimant satisfied the diagnostic description of

Listing 12.05(C). (*Id.* at p. 9-10) (citing *Griffith v. Comm'r of Social Security*, 582 F. App'x 555, 562 (6th Cir. 2014); *Cooper v. Comm'r of Social Security*, 217 F. App'x 450, 452 (6th Cir. 2007); *Sheeks v. Comm'r of Social Security*, No. 11-15457, 2013 WL 1279161, at *1 (E.D. Mich. Mar. 27, 2013); *Carter v. Comm'r of Social Security*, No. 1:10-cv-804, 2012 WL 1028105, at *6 (W.D. Mich. Mar. 26, 2012)).

The Commissioner points out that the State Agency reviewing psychologist opined that plaintiff had no adaptation limitations for purposes of the disability inquiry. (*Id.* at p. 10). The ALJ gave substantial weight to the state agency opinion.

According to the Commissioner, the vocational expert's findings also detract from plaintiff's argument that he is intellectually disabled under Social Security law. Plaintiff does not challenge the RFC and the ALJ's reliance on the vocational expert's testimony that a person with plaintiff's education, work experience, age, and residual functional capacity could perform jobs existing in significant numbers in the national economy. (*Id.* at p. 11) (Tr. 31, 73-76).

D.     Plaintiff's Reply

Plaintiff distinguishes the case law the Commissioner relies upon to argue that school records are not enough to satisfy the Listing. (Dkt. 18, at p. 2). Specifically, in *Foster*, he points out that there was no evaluation or testing

contemporaneous with her developmental period to show that her intellectual functioning was sub-average prior to age 22.  (*Id.* at p. 2-3) (citing *Foster*, 279 F.3d at 355).  The only evidence the plaintiff presented was that she left school after completing the ninth grade, but the reason why she did not continue in school was unclear.  (*Id.*).  Further, the court found that the evidence did not demonstrate or support onset of deficits in adaptive functioning prior to age 22.  The plaintiff worked as an accounting clerk prior to her injury, which demonstrated that she had the ability to perform relatively complicated tasks.  (*Id.*).

Unlike in *Foster*, plaintiff contends that he did provide contemporaneous evidence of significant sub-average intellectual functioning during the developmental period: he provided cumulative school records through the eighth grade which showed failing marks in English, math, reading, and speech.  (*Id.* at p. 3) (Tr. 213).  He also provided testimony and a medical opinion on his diagnosis of intellectual disability.  Further, plaintiff has shown why he did not continue in school: he went to prison for murder.

Plaintiff also contrasts his work history with Foster's.  (*Id.* at p. 4). Plaintiff's work history was unskilled and consisted of several short-term jobs. According to plaintiff, his past semi-skilled work as a metal grinder does not demonstrate that he could engage in complicated tasks.  Rather, plaintiff's employment records demonstrate that he had that job for one year and did not earn

sufficient wages for it to be considered substantial gainful activity. (*Id.* citing Tr. 154).

Finally, plaintiff states that the ALJ did not evaluate the entire record in determining whether plaintiff satisfied the diagnostic description of Listing 12.05 and the ALJ's findings of fact are not supported by substantial evidence. (*Id.* at p. 4).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

9

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

11

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

      B.    <u>Governing Law</u>

      The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled. F. Bloch, Federal

Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental

> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the

plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding rejecting the existence of disability, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

13

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

As previously noted, if a claimant does not have current substantial gainful employment and suffers from a qualifying severe impairment, the ALJ must assess whether the claimant satisfies a listed impairment.  *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii).  If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled.  *Id*.  When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation for his findings and conclusions in order to facilitate meaningful review.  *Hoffmeyer v. Comm'r of Soc. Sec.*, 2015 WL 12670493, at *10 (E.D. Mich. Aug. 17, 2015), report and recommendation adopted sub nom. *Hoffmeyer v. Colvin*, 2015 WL 6735337 (E.D. Mich. Nov. 4, 2015) (citing

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  An

ALJ's failure to sufficiently articulate his Step Three findings is error.  *See id.*

(citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp.2d 846, 858-59 (E.D. Mich.

2012)); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL

4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the

ALJ "made only a blanket statement that the claimant did not meet or equal a

Listing section").

The requisite explanation and support need not be located entirely within the

section of the ALJ's decision devoted specifically to step three; courts have

endorsed the practice of searching the ALJ's entire decision for statements

supporting his step three analysis."  *Staggs v. Astrue*, 2011 WL 3444014, at *3

(M.D. Tenn. Aug. 8, 2011); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL

4897364, at *6 (E.D. Mich. Sept.14, 2012).  Moreover, this court will not overturn

an ALJ's decision if the failure to articulate Step Three findings was harmless.  *See*

*M.G*, 861 F.Supp.2d at 859.  Such an error is harmless where "concrete factual and

medical evidence is apparent in the record and shows that even if the ALJ had

made the required findings, the ALJ would have found the claimant not

disabled...."  *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D.

Tenn. Mar. 1, 2010)).  Thus, remand is not required where the evidence makes

clear that even if he "had made the required findings, [he] would have found the

claimant not disabled." *Id.*; *see Hoffmeyer*, 2015 WL 12670493, at *10 (To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria). Conversely, remand is appropriate in cases where the court's review of the ALJ's decision and the record evidence leaves open the possibility that a listing is met. *Hoffmeyer*, 2015 WL 12670493, at *10 (citing *Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing")).

Plaintiff argues that his mental impairment involving intellectual disability meets or equals Listing 12.05C, Intellectual Disability, which provides, in pertinent part,

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § Pt. 404, Subpt. P, Appx. 1, Listing 12.05 (version effective 8/12/15-

5/23/16).  The Commissioner concedes that plaintiff meets the C criteria.  (Dkt. 16,

at p. 6, "The Commissioner agrees with plaintiff's argument that, during the

alleged disability period, he "ha[d] a valid verbal, performance, or full scale IQ of

60 through 70 and a physical or other mental impairment imposing an additional

and significant work-related limitation of function.'").  However, the

Commissioner argues that "a reasonable mind" can agree with the ALJ's

conclusion that plaintiff did not demonstrate the diagnostic criteria of the listing.

Based upon the development of the case law in this Circuit on this issue, the

undersigned agrees.

   The ALJ's listing analysis regarding 12.05 is as follows:

> In September 2015, the claimant underwent IQ testing on
> the Wechsler Intelligence Scale, 4th Edition (WAIS-IV),
> obtaining a full-scale IQ score of 63, verbal
> comprehension index of 66, and processing speed index
> of 65 (Exhibit 7F/4-5).  These scores demonstrate
> limitations in the claimant's current intellectual
> functioning, which the undersigned addressed in
> assessing his mental residual functional capacity.
> However, although the examining psychologist
> diagnosed the claimant with mild intellectual disability
> (Exhibit 7F/6), the claimant's condition does not meet
> any listing under section 12.05 because the record does
> not demonstrate onset before the claimant attained age 22
> by a preponderance of the evidence.
>
> Besides the claimant's self-reported description difficulty
> in school (Exhibit 7F; Hearing Testimony), the only
> evidence of childhood impairment available in the record

is a copy of the claimant's report card, which shows the
claimant received poor grades in school (Exhibit 11E).
As there are several reasons why an individual would
receive poor grades, this evidence is insufficient to
conclude that the claimant's poor grades stem from,
"significantly subaverage general intellectual functioning
with deficits in adaptive functioning initially manifested
during the developmental period" as required under
section 12.05.

(Tr. 24).

Substantial evidence exists to support the ALJ's determination that plaintiff

does not meet or equal Listing 12.05.  The Sixth Circuit has held that neither

circumstantial evidence such as school records nor a history of special education

combined with an adult IQ score indicative of limitations in intellectual

functioning are necessarily enough to demonstrate that a claimant had significantly

sub-average general intellectual functioning before age twenty-two.  *Foster,* 279

F.3d at 352–55 (finding that a ninth-grade education completed through special

education classes, followed by numerous unsuccessful attempts at a GED, coupled

with adult full scale IQ scores of 69 and 68 upon retesting did not establish

adaptive functioning deficits prior to age twenty-two, noting the reason for

plaintiff's school departure was unclear); *Eddy v. Comm'r of Soc. Sec.,* 506 Fed.

Appx. 508, 510 (6th Cir. 2012) (Holding that a claimant's eighth grade education

with a history of special education classes did not establish significantly deficits in

adaptive functioning prior to age twenty-two, and); *Hayes v. Comm'r of Soc.*

*Sec.,* 357 Fed. Appx. 672, 676–77 (6th Cir. 2009) ("This Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two.").

Here, plaintiff provided school records that indicate generally poor performance in math, reading, and English, but which also show plaintiff achieving a "C" in mathematics in seventh grade (semester ending 6/78), and grades ranging from "B" to "E" (subjects are virtually illegible) in the years up through sixth grade.  (Tr. 213-215).  The aforementioned grades were earned in general education classes.  Additionally, plaintiff self-reported that he was moved out of the eighth grade into special classes because he was behind.  (Tr. 60)  Yet notably, he stated that he stopped going to school when he went to prison at age 16, not because of significantly subaverage general intellectual functioning.[2]  In his reply brief, plaintiff seems to infer that the fact that his reason for leaving school is known, presents grounds to meaningfully distinguish his case from the *Foster* plaintiff.  It does not: The court's point in rejecting Foster's leaving school in the ninth grade as proof of significantly subaverage intellectual functioning was that it did not necessarily show that she left due to her intellectual functioning.  While Foster's situation left open the possibility that she may have left for that reason,

---

[2] Indeed, at least one record indicates that he completed the 11th grade – which suggests that he may have completed additional grade equivalents while incarcerated.  Tr. 255

plaintiff's leaving school because he committed a homicide would seem to demonstrate fairly clearly that plaintiff did not leave on account of his intellectual functioning.

Plaintiff also stated that he attempted to obtain a GED while in prison, but failed three times.  (Tr. 45, 255).  Of note, the ALJ found plaintiff's testimony regarding his symptoms to be not entirely credible, and plaintiff has not challenged this determination.  (Tr. 27).  Testing in 2015 revealed that he has a full-scale IQ test score of 63, but, like the plaintiff in *Foster,* this testing was not contemporaneous with his developmental period, as plaintiff was roughly 57 years old at the time of the test.  The Sixth Circuit has been clear that school records along with an IQ test score demonstrating significantly subaverage intellectual functioning from after the developmental period are inadequate proof of subaverage intellectual functioning manifesting before age 22.  *See Foster*, *Eddy*, and *Hayes*, *supra*; *see also Steck v. Comm'r of Soc. Sec*., 2017 WL 1214626, at *3 (N.D. Ohio Mar. 31, 2017) (Where the only evidence in the record to establish subaverage intelligence during the developmental stages consisted of enrollment in special education classes claimant had not established this element was supported by substantial evidence).  Because plaintiff has not brought forth evidence to establish that he could possibly meet or equal the diagnostic criteria, the ALJ did not err in finding that he does not meet or equal the Listing.  *See Hoffmeyer*, 2015

20

WL 12670493, at *10 (To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria).

Plaintiff also cites psychological examiner Dr. Stack's opinion, in which Dr. Stack assessed plaintiff's IQ score, diagnosed mild intellectual disability, and stated that plaintiff's "early school records imply that his intellectual difficulties were present throughout his life, dating back to his grade school years." (Tr. 293). While the ALJ did not discuss this portion of Dr. Stack's opinion, it does not detract from her decision. This is so because the opinion itself expressly states that Dr. Stack relied on plaintiff's school records, citing no other evidence, to infer that his intellectual deficits were present during developmental years. As discussed, the Sixth Circuit has expressly held that grade school records alone are insufficient to determine that intellectual disability with adaptive deficits manifested before age 22. As such, Dr. Stack's opinion does not call into question the ALJ's decision at Step Three.

Plaintiff further argues that his past work shows adaptive deficits because his work is mostly unskilled and short-term, and his only semi-skilled job lasted for one year and he did not earn enough to constitute substantial gainful activity, and that he received assistance from family in various activities such as shopping. (Dkt. 12, at p. 21; Dkt. 18, at p. 4). Notwithstanding plaintiff's argument, and while it may be true that his work was largely unskilled and his family would help

with certain tasks, the fact remains that plaintiff has not marshalled evidence to establish significantly subaverage general intellectual functioning before age 22. Moreover, as noted by the Commissioner, the ALJ also relied on State agency psychological consultant, Dr. Morrow's opinion that plaintiff had no adaptation limitations.  (Tr. 29, 85-90).

In light of the Sixth Circuit precedent cited above, it can reasonably be concluded that the record evidence before the ALJ provided substantial evidence to support her conclusion that plaintiff does not meet or equal the diagnostic criteria of the listing, including Dt. Stack's opinion based on information the Sixth Circuit has deemed insufficient.

For the foregoing reasons, the undersigned finds no reason to believe that the ALJ's Step Three determination is not supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 28, 2018                   s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 28, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
<u>tammy_hallwood@mied.uscourts.gov</u>
